**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED

02 MAY -1 PM 3: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **ELIZABETH CARRA,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **THE STEWART LAW GROUP, P.C.; and** | ) |
| **MARVIN L. STEWART, JR.,** | ) |
| | ) |
| **Defendants.** | ) |

Civil Action No. CV-01-S-0311-S

ENTERED

MAY - 1 2002

**MEMORANDUM OPINION**

This action is before the court on defendants' motion for sanctions against plaintiff and plaintiff's counsel for their allegedly frivolous filing of this lawsuit (doc. no. 111). Defendants' motion stems from plaintiff's pending motion to dismiss the action without prejudice on jurisdictional grounds (doc. no. 101). In her complaint, plaintiff alleged that defendants were liable, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Alabama state law, for sexual harassment of plaintiff during her employment with defendant The Stewart Law Group, P.C. ("SLG"). Defendants now claim that, although plaintiff allegedly had knowledge prior to the filing of her federal claims that SLG did not meet statutory prerequisites for filing a Title VII claim[1] — and, thus, that the complaint suffered from fatal jurisdictional defects — plaintiff and her counsel nevertheless refused to dismiss the action for more than one year. Upon consideration of the motions, pleadings, evidentiary submissions, and oral arguments of counsel at this court's April 25, 2002 hearing, this court concludes that plaintiff's motion to dismiss this action without prejudice is due to be granted in part and denied in part, and that defendants' motion for sanctions is due to

---

[1] Title VII, 42 U.S.C. § 2000e(b) states that the term "employer" connotes a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...."



be denied.

## I. STATEMENT OF FACTS

Plaintiff was an employee of defendant SLG between March of 1997 and May 13, 2000, when she received a letter of termination.[2]  Plaintiff was employed by SLG as a paralegal, and was, at all times relevant to this action, supervised by defendant Marvin L. Stewart, Jr. ("Stewart").[3] Plaintiff had worked as Stewart's paralegal once before, during her employment with another law firm.[4]  That previous relationship apparently was unremarkable.  During her employment with SLG, however, plaintiff claims that she was subjected to "a sexually charged working environment and *quid pro quo* sexual harassment by Stewart, her supervisor."[5]

Specifically, plaintiff alleges that, during the course of her employment, Stewart offered "unwelcomed morning hugs and kisses to all of the female staff"; sent pornographic video material to plaintiff's electronic mail box; instructed plaintiff to watch a pornographic video clip from the Internet during office hours, while Stewart caressed her and commented on the video; mailed adult-subject matter magazines to plaintiff and another female office worker on multiple occasions; engaged plaintiff in detailed personal conversations about his own and her sexual relationships; suggested that plaintiff, who is white, should have sexual relations with an African-American man, like Stewart, because "black men 'ha[ve] larger penises,'" and because "'all white women should try them'"; solicited plaintiff for sex during out-of-town business trips; had flowers delivered to plaintiff's hotel room on out-of-town business trips, and asked plaintiff for permission to come to her room to see the flowers; had flowers delivered to plaintiff repeatedly in Birmingham, Alabama,

---

[2] *See* Complaint ¶ 41.

[3] *See id.* ¶ 16.

[4] *See id.*

[5] *Id.* ¶ 17.

where plaintiff lived and worked, attached to which were cards reflecting sentimental greetings or false senders' names (allegedly to disguise that Stewart was himself the sender); told plaintiff that he "had been in love with her for twelve (12) years"; approached at least one of plaintiff's friends in public to discuss plaintiff's sexual relationships, during which conversation he commented that plaintiff "just needed a 'good f--king'"; repeatedly asked plaintiff on dates; commented on plaintiff's personal appearance in a sexual fashion, suggesting that plaintiff alter her style of dress to better reveal her body; made numerous telephone calls and sent numerous e-mail messages to plaintiff regarding her dating and sexual relationships; contacted at least one of plaintiff's friends by telephone to demand information about plaintiff's sexual relationships; told plaintiff that he was as "infatuat[ed]" with her as if he had a "drug addiction"; accessed plaintiff's private e-mail account without her knowledge on numerous occasions, and read plaintiff's e-mail messages; and, following plaintiff's complaints to Stewart, refused to transfer plaintiff to work with another attorney at SLG because, Stewart explained, "[y]ou can't leave me, I love you."[6]

In light of Stewart's alleged conduct and following her termination from SLG, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on June 1, 2000. On the preprinted Charge form, plaintiff listed SLG as the employer that had discriminated against her, and stated that SLG employed at least fifteen people.[7] Plaintiff also stated that she believed SLG had discriminated against her on the basis of her sex from February of 1999 until the date of filing of the charge, and in retaliation for her complaints of sexual harassment against Stewart.[8] On January 12, 2001, the EEOC issued, on plaintiff's request, a notice of right to sue.[9]

---

[6] *Id.* ¶¶ 18-38, 51.

[7] *See* Complaint, Ex. 1 (EEOC Charge), at 1.

[8] *See id.* at 3.

[9] *See id.*, Ex. 2 (Right to Sue letter).

Plaintiff subsequently filed a complaint against defendants in this court on February 1, 2001, alleging that defendants had violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[10] Plaintiff also alleged state law claims of: intentional infliction of emotional distress; negligent hiring, training, supervision, and retention; assault and battery; invasion of privacy; false imprisonment; defamation (including both libel and slander); breach of the duty of confidence attendant to the attorney-client relationship; breach of an implied contract of confidentiality; and, breach of fiduciary duty.[11] After more than one year's worth of combative, discourteous, and time- and resource-consuming litigation by both sides, however, plaintiff moved this court to dismiss her action without prejudice, stating that she had determined jurisdiction did not lie in the federal courts. Plaintiff's February 6, 2002 motion to dismiss was based on the fact that she had learned from recent depositions that defendants did not meet the jurisdictional requirement of Title VII, 42 U.S.C. § 2000e(b): namely, that defendants had employed fifteen or more employees for a period of at least twenty weeks during any relevant calendar year.[12]

Now faced with defendant's motion for sanctions against plaintiff and her counsel, the court undertakes a review of the he-said/she-said account of the parties' conduct throughout the course of the litigation. Defendants assert that, in May of 2000, when plaintiff filed a charge of discrimination against them, they had "informed Plaintiff's counsel that the Firm did not meet the jurisdictional limit of Title VII because it did not have twenty (20) weeks where it employed fifteen (15) or more employees."[13] In fact, plaintiff filed her charge of discrimination on June 1, 2000.[14]

---

[10] *See* Complaint, at Count One.

[11] *See id.* at Counts Two-Eleven.

[12] *See* Motion to Dismiss (doc. no. 101), ¶ 3 (17 weeks); Plaintiff's evidentiary submissions, Ex. 3 (Haynes affidavit), ¶ 9 (18 weeks).

[13] Defendants' Memorandum of Law (doc. no. 115), at 2.

[14] *See* Complaint, Ex. 1 (EEOC charge).

4

Plaintiff's counsel does state in an affidavit submitted to the court that she met with defendants' counsel, Barry Frederick, on May 10, 2000, during which meeting Mr. Frederick expressed his doubts that defendants met the jurisdictional requirement of fifteen employees.[15] Plaintiff's counsel avers that, following that meeting, she e-mailed her client regarding the number of employees employed by defendants. Plaintiff replied to her counsel on May 12, 2000 with a list of twenty employees she believed had been employed by defendants since January 1, 2000, although at least four of those employees had yet to begin employment with defendants.[16]

Plaintiff's counsel described another such discussion with defendants' counsel during "the summer of 2000," at which time plaintiff's counsel stated that if the EEOC determined that the action did not meet the jurisdictional requirements of Title VII, then plaintiff would restrict her lawsuit to the state courts.[17] Plaintiff's counsel states that she had one more telephone conversation with defendants' counsel on an unspecified date regarding the number of defendants' employees, and that she "asked [defendants' counsel] if he had any documents in addition to what was produced to the EEOC with regards to 15 employees ... [and] informed Frederick that [she] was not convinced by the documents produced that jurisdiction was lacking."[18] Plaintiff's counsel states that it was not until she conducted depositions and further discovery that she learned that "there were only 18 weeks in 2000 that [SLG] had 15 or more employees. Stewart's 'draft' charts to the contrary depicted 15 weeks with 15 employees. He had previously represented that there were never 15 employees working for him."[19]

---

[15] *See* Plaintiff's evidentiary submissions, Ex. 3 (Haynes affidavit), at 2.

[16] *See id.*, Ex. 10 (May 12, 2000 Carra e-mail to Haynes).

[17] *See* Plaintiff's evidentiary submissions, Ex. 3 (Haynes affidavit), at 2-3.

[18] *Id.* at 3.

[19] *Id.*(emphasis in original).

5

According to defendants, from the date plaintiff filed her EEOC charge (June 1, 2000) until the filing of this lawsuit (February 1, 2001), plaintiff and her counsel allegedly declined at least five offers to review SLG's payroll records in order "to confirm that there was no merit to Plaintiff's lawsuit because of the jurisdictional issue."[20] Defendants point to a July 24, 2000 letter to plaintiff's counsel, in which Stewart wrote: "This Firm has never had fifteen (15) full-time employees at any point during its existence. ... You may inspect the payroll records of the SLG for the past two (2) years at any time to satisfy yourself on this issue."[21] (Although defendants contend that they repeated this statement in another July 2000 letter to plaintiff, this time written by Mr. Frederick, nowhere in the evidence submitted by either party does the court find such a letter, and defendants have been unable to locate a copy of this alleged communication.)[22]

Plaintiff's counsel wrote Mr. Frederick on August 1, 2000 regarding the July 24, 2000 letter, and explained that plaintiff had provided her with a list of more than fifteen employees over the fifty-two week period preceding the filing of her EEOC charge.[23] Plaintiff's counsel also stated that, while Stewart had attached an employee chart to his July 24, 2000 letter to plaintiff and her counsel, Stewart had failed to include at least five specific employees. Finally, plaintiff's counsel noted that the EEOC had exclusive jurisdiction over the charge at that juncture, and that the parties should expect the EEOC to dispose of the charge if the jurisdictional requirement was not met.[24] To that end, on September 14, 2000, plaintiff's counsel authored a letter to the EEOC to address the jurisdictional requirement. Plaintiff's counsel sent the letter in response to an an EEOC

---

[20] Defendants' Memorandum of Law (doc. no. 115), at 2.

[21] *See* Plaintiff's evidentiary submissions, Ex. 19 (Stewart letter, July 24, 2000), at 1-2 (emphasis in original).

[22] *See* Defendants' Memorandum of Law (doc. no. 115), at 3.

[23] *See* Plaintiff's evidentiary submissions, Ex. 20 (Aug. 1, 2000 letter from Haynes).

[24] *See id.*

investigative officer's request for more information as to the number of employees employed by SLG, as the EEOC was in the process of soliciting such information from SLG.[25]  Accordingly, plaintiff's counsel responded by submitting a list to the EEOC of twenty-six employees whom plaintiff believed to have been employed by SLG during 1999 and 2000.[26]

On November 20, 2000, defendants submitted a letter to the EEOC regarding plaintiff's charge of discrimination, requesting that the EEOC dismiss the charge because SLG had not employed fifteen employees for twenty weeks in either 1999 or 2000.[27]  Defendants make reference to this letter to the EEOC as another example of defendants' offer to plaintiff's counsel to review SLG's payroll records, which plaintiff's counsel allegedly declined.  There is no evidence before the court that plaintiff's counsel so declined this offer, even considering that this "offer" is buried on page 23 of a 51-page singled-spaced letter written to the EEOC, rather than to plaintiff's counsel.[28]

The next instance of the parties' discussion of the jurisdictional issue appears in a letter dated January 22, 2001, in which Mr. Frederick writes to plaintiff's counsel that "Ms. Carra should not sue the Stewart Law Group, P.C. under Title VII ... because the firm lacks the number of employees required for jurisdiction under Title VII."[29]  This letter followed on the heels of plaintiff's receipt of a notice of right to sue on January 15, 2001.  Mr. Frederick's January 22, 2001 letter included another offer to plaintiff's counsel to review the firm's payroll records, and other documents, to

---

[25] *See id.*, Ex. 21 (Sept. 14, 2000 EEOC letter), at 1.

[26] *See id.* at 1-2.

[27] *See* Defendants' Brief in Opposition to Plaintiff's Motion for Contempt Sanctions (received May 2, 2001), Ex. A, at 23.  The court notes that defendants failed to submit a copy of this November 20, 2000 EEOC letter in support of their motion.

[28] *See id.*

[29] Plaintiff's evidentiary submissions, Ex. 25 (Jan. 22, 2001 letter from Frederick).

confirm the alleged lack of jurisdiction.

Despite defendants' assertion that plaintiff and her counsel ignored this offer,[30] the court notes instead that plaintiff's counsel responded three days later, on January 25, 2001, and stated that she was "amenable to looking at whatever documents you have that you believe indicates The Stewart Law Group does not have the requisite number of employees. Since that information is readily available, please have copies delivered to my office on Friday or call and I will send a runner."[31] That letter also included a specific request for payroll records and information regarding the firm's law clerks and runners employed over the course of the previous two years. Defendants' counsel responded the following day, January 26, 2001, to the effect that defendants were gathering the documents plaintiff's counsel had requested, and would deliver them the following week.[32] By March 23, 2001, however, plaintiff's counsel still had not received these documents from defendants' counsel[33] — even though defendants' counsel stated that the documents would "conclusively establish that the Stewart Law Group, P.C. has not had the requisite number of employees to bring the firm under Title VII's jurisdiction."[34]

It appears that the payroll records alleged to satisfy the jurisdictional inquiry were not furnished by defendants to plaintiff's counsel until July 20, 2001 — more than one year after plaintiff filed her charge of discrimination.[35]

Even so, it appears that neither plaintiff nor her counsel had reviewed these records by November of 2001, when, in her responses to defendants' first set of interrogatories, plaintiff listed

---

[30] *See* Defendants' Memorandum of Law (doc. no. 115), at 4.

[31] Plaintiff's evidentiary submissions, Ex. 28 (Jan. 25, 2001 letter from Haynes), at 1.

[32] *See id.*, Ex. 29 (Jan. 26, 2001 letter from Frederick).

[33] *See id.*, Ex. 30 (March 23, 2001 letter from Haynes).

[34] *Id.*, Ex. 29 (Jan. 26, 2001 letter from Frederick).

[35] *See* April 26, 2002 Haynes letter (delivered to chambers, and stamped "received" on April 29, 2002).

8

those persons she believed to have been employed by defendants during 1999 and 2000, and stated, "Plaintiff reserves the right to amend this interrogatory after reviewing defendants' pay records."[36] Plaintiff does not offer an explanation for the approximate six-month delay in conducting this review.

Plaintiff does claim that she attempted to discover information on the jurisdictional issue on October 16, 2001, when she propounded interrogatories to defendants that required defendants to provide information regarding each of SLG's lawyers and staff members.[37] Defendants' responses allegedly pointed plaintiff to the information defendants had submitted to the EEOC in response to plaintiff's EEOC charge, and to unspecified documents that had been provided to plaintiff in July of 2001.[38] Plaintiff claims that she propounded a second set of interrogatories, which included nine questions specific to the question of the court's jurisdiction, following this court's November 19, 2001 order staying all discovery in the case until the parties had explored the jurisdictional question.[39] Defendants allegedly never responded to the second set of plaintiff's interrogatories,[40] or, when they did, allegedly provided "unresponsive, vague and ambiguous" responses.[41] Plaintiff's counsel notified defendants by letters dated November 29, 2001 and December 14, 2001 that she believed defendants' responses to the interrogatories and requests for production were inadequate. In each letter, plaintiff's counsel repeated her requests for the documents, and explained the rationale for each request.[42] It is not clear to what extent defendants answered plaintiff's letters and further

---

[36] *See* Defendants' Memorandum of Law (doc. no. 115), Ex. 10 (Plaintiff's Response to Defendants' First Interrogatories), ¶¶ 13-14.

[37] *See* Plaintiff's Response (doc. no. 124), ¶ 36.

[38] *See id.*

[39] *See* Order, Nov. 19, 2001 (doc. no. 75).

[40] *See* Plaintiff's Response (doc. no. 124), ¶ 38.

[41] *Id.*¶ 39.

[42] *See* Plaintiff's evidentiary submissions, Ex. 37, 38 (letters from Haynes).

requests.

In addition, plaintiff subpoenaed records from defendants' payroll service, Paychex, Inc., on November 16, 2001, seeking records relevant to the jurisdictional issue.[43] Stewart contacted Paychex, Inc. by letter dated November 28, 2001, however, and instructed the company not to furnish the requested documents to plaintiff.[44] Stewart also announced his intention to file a motion for protective order, to ensure that personal financial information would be redacted from the records prior to their production. Stewart never filed such a motion.

Meanwhile, on November 16, 2001, plaintiff noticed the depositions of Stewart and Jada Williams, SLG's administrator, for December 11 and 12, 2001. Both refused to appear, however, and on December 14, 2001, plaintiff filed a motion to compel those depositions.[45] The depositions of Stewart and Williams were ultimately conducted on January 31, 2002.[46] Plaintiff filed the subject motion to dismiss on February 6, 2002, allegedly because the deposition testimony finally had made clear to plaintiff and her counsel that defendants did not meet the jurisdictional threshold of Title VII.[47]

## II. DISCUSSION

Defendants seek an award of attorney's fees and sanctions against plaintiff and her counsel on four grounds of authority: (1) Federal Rule of Civil Procedure 11; (2) 28 U.S.C. § 1927; (3) Title VII's statutory provision of fees to the prevailing party; and, (4) the inherent powers of the court to manage its affairs.[48] The court considers these arguments, in turn, below.

---

[43] *See* Plaintiff's Response (doc. no. 124), ¶ 41.

[44] *See* Plaintiff's evidentiary submissions, Ex. 39 (letter from Stewart to Paychex, Inc.).

[45] *See* Motion to Compel (doc. no. 83).

[46] *See* Plaintiff's Response (doc. no. 124), ¶ 46.

[47] *See* Motion to Dismiss (doc. no. 101), ¶ 3.

[48] *See* Defendants' Memorandum of Law (doc. no. 115), at 5.

10

## A.    Rule 11 Sanctions

Following its amendment in 1983, it became clear that "the central purpose of Rule 11 is to deter baseless filings in district court and, thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).  Accordingly,

> Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and "not interposed for any improper purpose."  An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction."  Such a sanction may, but need not, include payment of the other parties' expenses. ... Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, ... any interpretation must give effect to the Rule's central goal of deterrence.

*Id.*  Or, as the Eleventh Circuit has written, Rule 11's "central goal is to deter vexatious and frivolous litigation, ... and to achieve that goal a court may impose sanctions that compensate those injured by unreasonable litigation practices, or punish those who engage in such practices, or both." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991) (internal quotation marks and citations omitted) (quoting *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454).

When the jurisdictional issue was first addressed by the parties' counsel in May of 2000, plaintiff supplied Ms. Haynes with a list of twenty employees that plaintiff believed had been employed by SLG since January 1, 2000.[49]  When Stewart wrote plaintiff's counsel on July 24, 2000 to again contest the jurisdictional issue, Stewart's letter listed SLG's employees.  Plaintiff contended that Stewart's list omitted persons she knew to have been employed by SLG.[50] As a result, Ms. Haynes responded with a letter to defendants' counsel, explaining plaintiff's objection that

---

[49] *See* Plaintiff's evidentiary submission, Ex. 10 (May 12, 2000 Carra e-mail to Haynes).

[50] *See id.*, Ex. 19 (July 24, 2000 Stewart letter).

11

Stewart's employee list had omitted at least five employees.[51] Ms. Haynes also pointed out that the jurisdictional issue was being considered at that time by the EEOC on the basis of plaintiff's June 1, 2000 EEOC charge, and that she expected the EEOC to dispose of the claim, if jurisdiction indeed was lacking.[52]

Plaintiff's counsel stated at this court's April 25, 2002 hearing that she had learned, on August 2, 2000, that the EEOC had requested defendants to supply records related to the jurisdictional issue.[53] As of August 23, 2000, defendants had failed to submit those documents to the EEOC.[54] On September 14, 2000, in response to a request from the EEOC officer investigating plaintiff's charge, plaintiff's counsel supplied the EEOC with a list of twenty-six employees whom plaintiff believed had been employed by SLG in 1999 and 2000.[55] The following month, on October 27, 2000, the EEOC contacted defendants requesting information relevant to plaintiff's EEOC charge; all of those requests were for substantive information relating to the charge, however, and did not address the jurisdictional question.[56] Plaintiff's counsel stated at the April 25, 2002 hearing that, based on the subject matter of the October 27, 2000 EEOC request, it was her belief that the EEOC had "established jurisdiction and [had started] the substantive investigation."[57]

Plaintiff received her right to sue letter from the EEOC approximately three months later, on January 15, 2001.[58] Plaintiff's counsel received a letter from Mr. Frederick the following week, which stated that plaintiff should not sue defendants under Title VII because jurisdiction under that

---

[51] *See id.*, Ex. 20 (Aug. 1, 2000 Haynes letter).

[52] *See id.*

[53] *See* Plaintiff's April 25, 2000 Motion Docket Ex. 1 (August 23, 2000 letter to Chaya Bail).

[54] *See id.*

[55] *See* Plaintiff's evidentiary submission (Sept. 14, 2000 Haynes letter).

[56] *See* Plaintiff's April 25, 2000 Motion Docket Ex. 2 (Oct. 27, 2000 EEOC letter).

[57] Transcript of Motion Hearing, April 25, 2002 hearing, at 23-24.

[58] *See* Plaintiff's Response (doc. no. 124), ¶ 25.

statute was lacking.[59] Mr. Frederick offered plaintiff the opportunity to review defendants' payroll records to confirm that fact. Ms. Haynes responded immediately, and, stating that she was amenable to examining the jurisdictional issue, asked that copies of the information be delivered to her office.[60] Plaintiff's counsel also explained that she had located case law to support her view that SLG had employed the requisite number of employees to sustain jurisdiction.

Although Mr. Frederick responded the following day to inform plaintiff's counsel that the documents would be ready for her review during the first week of February, in fact, Mr. Frederick gave plaintiff's counsel her first opportunity to review those records on *July 20, 2001* — nearly *six months* after defendants' offer and plaintiff's request; plaintiff's counsel ultimately reviewed the records on July 24, 2001, and received copies of the documents in her office on August 7, 2001.[61]

Despite this review, plaintiff's counsel explained at the court's April 25, 2002 hearing that the documents were not sufficient to answer the jurisdictional question, because she had found certain employees to be missing from the payroll records, and because there were "numerous handwritings on the documents trying to say this person didn't start until this date, that you really couldn't understand."[62]

As a result, plaintiff's counsel states that she attempted to answer the jurisdictional question through interrogatories and requests for production of SLG's payroll records.[63] Plaintiff contends that defendants' responses to the two separate requests — which were made on October 16 and November 16, 2001, and were finally answered by defendants on November 27, 2001 — were

---

[59] *See* Plaintiff's evidentiary submissions, Ex. 27 (Jan. 22, 2001 Frederick letter).

[60] *See id.*, Ex. 28 (Jan. 25, 2001 Haynes letter).

[61] *See* April 26, 2002 Haynes letter (delivered to chambers, and marked "received" on April 29, 2002).

[62] Transcript of Motion Hearing, April 25, 2002 hearing, at 29.

[63] *Id.* at 30.

13

"unresponsive, vague, and ambiguous."[64] Consequently, plaintiff's counsel contacted defendants' counsel in November and again in December regarding the sufficiency of the responses, and included in her letters thorough explanations of the reasons for her requests as they concerned the jurisdictional question.[65]

Plaintiff also subpoenaed SLG's payroll service on November 16, 2001 for its records so that she might examine the records without the allegedly confusing handwritten notes and omissions by defendants. Stewart ordered the payroll service not to comply with the subpoena, however, stating that he planned to seek a protective order covering the records.[66]

Also on November 16, 2001, plaintiff's counsel set defendants' depositions for December 11, 2001. Because Stewart and SLG's firm administrator refused to appear, however, the depositions were not taken until January 31, 2002. One week following the depositions, plaintiff moved to dismiss this action for lack of jurisdiction, contending that the depositions had made it clear that SLG did not have the requisite number of employees to sustain a Title VII action.

Given these facts and circumstances, the court concludes that Rule 11 sanctions are not warranted against plaintiff or her counsel, because plaintiff's evidence shows that this litigation was "well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454. Plaintiff appears to have had legitimate cause to believe that SLG employed the requisite number of employees under Title VII. Plaintiff's counsel also appears to have been reasonably diligent in her efforts to investigate defendants' concerns that SLG did not have the requisite number of employees. *See id.* Accordingly, defendants' motion is due

---

[64] Plaintiff's Response (doc. no. 124), ¶¶ 36-39.

[65] *See* Plaintiff's evidentiary submissions, Ex. 37-38.

[66] *See id.*, Ex. 39 (November 28, 2001 Stewart letter to Paychex, Inc.)

to be denied in this respect.

**B.    28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. According to the Eleventh Circuit, for this court to impose sanctions on plaintiff's counsel, "(1) an attorney must engage in 'unreasonable and vexatious conduct'; (2) such 'unreasonable and vexatious conduct must 'multipl[y] the proceedings'; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001) (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).

Defendants argue that sanctions are warranted against plaintiff's counsel under 28 U.S.C. § 1927 because Ms. Haynes allegedly "multiplie[d] the proceedings ... unreasonably and vexatiously" by "pursuing this frivolous litigation."[67]  For the reasons detailed in the previous section, the court concludes that plaintiff's counsel did not unreasonably and vexatiously multiply the proceedings in this case.  Plaintiff's counsel appears to have had legitimate grounds for the filing of this action, and further appears to have pursued a reasonable review of the jurisdictional question throughout the course of this litigation.  While neither party stands before this court with totally clean hands, any significant delays in the resolution of the jurisdictional question appear to have resulted from the action (or inaction) of defendants and their counsel, by virtue of their failure to provide conclusive documentation regarding SLG's employees to plaintiff's counsel in timely fashion, and as a result of defendants' (however reasonable) plan to resolve pending state court

---

[67] Defendants' Memorandum of Law (doc. no. 115), at 13-14.

litigation on these issues prior to challenging jurisdiction in the federal court.[68] As such, defendants' motion is further due to be denied on these grounds.

## C.    Title VII

Defendants also argue that, under Title VII, they are "prevailing parties" and, thus, are entitled to have their attorneys' fees paid by plaintiff and her counsel.[69]  The Supreme Court has reiterated that it is the "general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees." *Christianberg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 415, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). According to the *Christianberg* Court, however, Title VII provides that "a district court may in its discretion allow an attorney's fee to the prevailing party." *Id.* at 416, 98 S.Ct. at 697.  A prevailing Title VII defendant will not be awarded its fees "unless a court finds that [a plaintiff's] claim was *frivolous, unreasonable, or groundless,* or that the *plaintiff continued to litigate after it clearly became so.*" *Id.* at 422, 98 S.Ct. at 701 (emphasis supplied).  The *Christianberg* Court added that, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.*  As the Eleventh Circuit has explained, the Supreme Court interpreted congressional intent for the passage of Title VII to include an assurance that "defendants could be protected from burdensome litigation having no legal or factual basis." *Bruce v. City of Gainesville*, 177 F.3d 949, 951 (11th Cir. 1999).

---

[68] During the April 25, 2002 hearing, defendants' counsel explained that, although Mr. Frederick had questioned the propriety of this court's jurisdiction under Title VII as early as May of 2000, defendants and their counsel chose not to raise the jurisdictional question to this court — despite their ethical obligation to do so — until November 14, 2001, approximately ten months after plaintiff filed her complaint.  Mr. Frederick attributed this delay to litigation strategy, as defendants (who were also battling plaintiff in the state courts) "hoped to wrap [the state] case up before ever having to address anything in this case.  And then we would come to you with a jurisdiction argument, and a res judicata argument .... And we tried to do that, and were not successful in doing that."  Transcript, April 25, 2002 hearing, at 46.

[69] Defendants' Memorandum of Law (doc. no. 115), at 15.

Again, for the reasons detailed in the foregoing discussion, the court is unable to conclude that plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christianberg Garment Co.*, 434 U.S. at 422, 98 S.Ct. at 701. Accordingly, defendants' motion is further due to be denied to this extent.

**D.      Inherent Authority of the Court**

Finally, defendants contend that this court's "inherent power to prevent abusive litigation by litigants and their attorneys" requires that sanctions be imposed against plaintiff and her counsel.[70] The Eleventh Circuit has recognized the inherent powers of federal courts to "impose reasonable and appropriate sanctions upon counsel for abusive litigation practices or for violations of procedural rules or court orders." *Donaldson v. Clark*, 819 F.2d 1551, 1557 n.6 (11th Cir. 1987) (citing cases). This inherent power includes the court's "ability to assess attorneys' fees and costs against the client or his attorney or both, when either has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991)). "The key to unlocking a court's inherent power is a finding of bad faith." *Byrne*, 261 F.3d at 1106 (internal quotation marks omitted) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). But, "[b]ecause the court's power inherent power is so potent, it should be exercised 'with restraint and discretion.'" *Id.* (quoting *Chambers*, 501 U.S. at 50, 11 S.Ct. at 2132).

Once again, for the reasons, facts, and circumstances detailed above, the court declines to find that plaintiff or her counsel acted in bad faith in filing or pursuing this litigation and, thus, are deserving of sanctions. Indeed, it may be that Stewart's own conduct should be examined for bad

---

[70] *Id.* at 14.

faith (as, for example, per Stewart's *repeated direct contact* with plaintiff about this action, despite his knowledge that plaintiff was represented by Ms. Haynes, and despite Ms. Haynes's repeated demand that Stewart cease such contact). This is even more the case when the court considers that Stewart is himself a member of the Bar.

### III. CONCLUSION

Accordingly, an award of sanctions would fail to serve its purpose here. The court has not lost sight of the fact that both parties and their counsel have never failed to miss an opportunity to bicker and squabble throughout the course of this litigation. Plaintiff, Stewart, and their respective attorneys come before this court with unclean hands; plaintiff, Stewart, and their counsel have engaged in dilatory maneuvers designed to embarrass the opposing side and their counsel and to sidetrack this litigation; both plaintiff and Stewart have conducted themselves unprofessionally and to the mutual embarrassment of their counsel and this court. Given this conduct, then, sanctions could be imposed by this court against all parties and counsel, with defendants and their counsel required to pay fees, costs, and sanctions to plaintiff and her counsel, and *vice versa*. Rather than waste more of the court's time and resources in assessing the propriety of each party's fees and costs (about which the parties have already begun to argue), or in determining the penalty appropriate to discipline and deter further such conduct, the court concludes simply that each party shall pay her, his, or its own fees and costs. Consequently, defendants' motion is due to be denied.

Further, plaintiff's motion is due to be granted in part and denied in part: this action is due to be dismissed *with prejudice* to the extent of plaintiff's federal law claim grounded in Title VII, and dismissed *without prejudice* to the extent of any state law claims plaintiff has alleged herein.

DONE this ⟋⟋ day of May, 2002.

_____
United States District Judge